## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JUAN VIDAL ROYBAL, II,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-20-1013-STE** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.[1]** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1]   Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 10-20). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 13, 2018—his alleged onset date. (TR. 12). At step two, the ALJ determined Mr. Roybal suffered from the following severe impairments: Diabetes Mellitus with Neuropathy; Status-Post Internal Derangement of the Left Knee with Residuals; Status-Post Fracture of the Right Ankle with Residuals; Degenerative Disc Disease; and Obesity. (TR. 12).

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 14). At step four, the ALJ concluded that Mr. Roybal retained the residual functional capacity (RFC) to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a). The claimant can walk and/or stand 2 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; and lift and/or carry 10 pounds occasionally, up to 10 pounds frequently.

(TR. 14).

With this RFC, the ALJ concluded that Plaintiff was unable to perform any past relevant work. (TR. 18). However, because the ALJ concluded that Mr. Roybal could perform the full range of sedentary work, he proceeded to assess the issue of disability utilizing the Medical-Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids"). *See* Social Security Ruling 83-11, Titles II And XVI: Capability to Do Other Work--the Exertionally Based Medical-Vocational Rules Met, 1983 WL 31252 at (1983) (allowing application of the Grids when the claimant can perform all of the exertional demand at a given level of exertion, i.e.—a full range of "sedentary" work).

Because, during the alleged period of disability, Mr. Roybal was considered a "younger individual age 18-44," and then a "younger individual age 45-49" with a high school diploma or more, with no transferrable work skills, and was deemed capable of performing a full range of sedentary work, the applicable "Grids" are Rules 201.28 & 201.21. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2; Rules 201.28 & 201.21. The ALJ applied these rules, and concluded that Mr. Roybal was not disabled. (TR. 19-20).

## III.   ISSUES PRESENTED

On appeal, Plaintiff alleges error: (1) in the ALJ's evaluation of the medical evidence and various impairments (2) in applying the Grids, and (3) at step five. (ECF No. 24:3-13; 27:2-8).

## IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual

findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.   PLAINTIFF'S FIRST PROPOSITION

In his first point of error, Plaintiff states: "The ALJ failed to properly evaluate, consider, and account for Mr. Roybal's impairments at step two, leading to a faulty RFC." (ECF No. 24:3). Under the rubric of this proposition, Mr. Roybal alleges error: (1) at step two; (2) in the consideration of his obesity; (3) in evaluating medical opinions related to Plaintiff's knee impairment; (4) in failing to include mental health limitations in the RFC; and (5) in the consideration of Plaintiff's pain. The Court finds no merit to Plaintiff's arguments.

### A.    Step Two

Plaintiff contends "[t]he ALJ's determination at step two of the sequential evaluation process failed because he did not properly consider the entire record and all of [Plaintiff's] impairments." (ECF No. 24:10). At step two, the issue is whether the claimant suffers from at least one "severe" medically determinable impairment. *See Dray v. Astrue,* 353 F. App'x 147, 149 (10th Cir. 2009). "[S]tep two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.' " *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 156, (1987) (O'Connor, J., concurring)). In circumstances where an ALJ deems at least one impairment severe, and proceeds to the remaining steps of the evaluation, any error at step two in failing to deem a certain impairment severe is considered harmless. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (stating that "any error [at step two] became harmless when the ALJ reached the proper conclusion that [the plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

At step two, the ALJ determined that Mr. Roybal suffered from "severe" Diabetes Mellitus with Neuropathy; Status-Post Internal Derangement of the Left Knee with Residuals; Status-Post Fracture of the Right Ankle with Residuals; Degenerative Disc Disease; and Obesity. (TR. 12). Following that determination, the ALJ proceeded to

assess the remaining steps in the disability analysis. *See* TR. 12-20. Thus, any error at step two is considered harmless.[2]

### B.   Obesity

Plaintiff contends error in the ALJ's consideration of Plaintiff's obesity at steps three and four. (ECF No. 24:3-6). First, Mr. Roybal acknowledges that the ALJ found Plaintiff's obesity to be "severe" at step two, but argues that the ALJ "referenced [the obesity] only briefly in the context of his discussion of whether Claimant's impairments me[]t or equal[ed] a listing [at step three]." (ECF No. 24:3). Second, Plaintiff acknowledges the ALJ's discussion of Plaintiff's obesity at step four, when the ALJ reported Plaintiff's body mass index (BMI) as 36.5; but argues that the ALJ's discussion "mischaracterizes the nature of Claimant's obesity; [because] the BMI to which the ALJ referred is on the low end of several BMIs noted in the record," namely a BMI of 40.72, which is considered "extreme" or "severe." (ECF No. 24:4). According to Plaintiff, "obesity is a multifactorial impairment that affects, and should be considered with, [Plaintiff's] depression and anxiety, diabetes mellitus with neuropathy, left knee and right ankle impairments, and degenerative disc disease." (ECF No. 24:5). Mr. Roybal contends "the ALJ failed in this regard" and "failed to properly discuss how obesity affects the musculoskeletal impairments." (ECF No. 24:6, 27:4). The Court disagrees.

---

[2] In the step two discussion, Plaintiff alleges that the ALJ failed to account for the "severe" impairments in the RFC "by failing to add, at the very least, a limitation on kneeling and/or stopping/bending." (ECF No. 24:11). This allegation will be addressed below. *See infra*.

An ALJ "must consider the limiting effects of obesity when assessing a person's RFC" and "explain how [he] reached [his] conclusion on whether obesity causes any limitations." SSR 19-2p, 2019 WL 2374244, at *4 (May 20, 2019). But "[o]besity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairments." *Id.* at *2. An ALJ does "not make general assumptions about the severity of functional effects of obesity combined with another impairment(s)," but instead "evaluate[s] each case based on the information in the case record." *Id.* at *4.

Here, at step three, the ALJ stated:

The undersigned has also placed emphasis on SSR 19-2p; Evaluating Cases Involving Obesity (May 20, 2019), and the combined effects of obesity with the musculoskeletal impairments, and any additional and cumulative effects of the obesity on the claimant's impairments. Based upon this analysis, the undersigned finds that the claimant's impairments, either singly or in combination, do not meet or equal the criteria established for an impairment shown in the Listings of Impairments in Appendix 1 to Subpart P pf Part 404.

(TR. 14). Then at step four, the ALJ cited Plaintiff's BMI as 36.5, which the ALJ acknowledged "falls into the obese range." (TR. 17). Then ALJ then stated: "Pursuant to SSR 19-2, obesity has been considered in the above residual functional capacity." (TR. 17). Based on the ALJ's discussion of Plaintiff's obesity at steps three and four, the Court concludes that the ALJ fulfilled his duty in considering obesity under SSR 19-2. The ALJ considered the obesity, singly, and in combination with other impairments and ultimately concluded that it caused no limitations in excess of the RFC. The Court finds no merit to Plaintiff's challenge to the ALJ's consideration of obesity.

### C.     Plaintiff's Knee Impairment

On February 26, 2016, while working, Plaintiff tripped over an empty beer keg, injuring his left knee. (TR. 268). He first reported the accident on March 1, 2016 to AMC Urgent Care. (TR. 261-264, 268). On March 1, 2016, an AMC Urgent Care provider gave Mr. Roybal temporary work restrictions involving: (1) no lifting over 10 pounds; (2) no walking or standing over 2 hours without a 15-minute break; and (3) no climbing stairs or ladders. (TR. 264) These restrictions were given from "3/1/16 to 3/11/16" pending a left knee MRI (TR. 264). On March 11, 2016, an AMC Urgent Care Provider provided the same temporary work restrictions from "3/11/16 to [date of MRI]" which was scheduled for March 14, 2016. (TR. 258). On March 3, 2016, Dr. Debra Montgomery, from Concentra Medical Centers, examined Plaintiff and opined that he could: (1) "occasionally" stand, walk, and lift up to 10 pounds; (2) not drive the company vehicle; (3) change positions periodically to relieve discomfort; (4) perform seated work only; (5) not squat, kneel, walk on uneven terrain, climb stairs or ladders; (6) walk or stand only as needed. (TR. 250). Plaintiff challenges the ALJ's treatment of the opinions offered from both the AMC Urgent Care provider and Dr. Montgomery.

First, as to the limitations offered by the AMC Urgent Care provider, the ALJ stated:

> There also appear to be temporary limitations given in 2016 by various urgent care providers. The undersigned finds these opinions unpersuasive, because they are intended to be temporary, are outside the alleged time frame, and were in conflict with the claimant's actual work activities at the time. Further, these opinions were only intended to remain until the claimant underwent a left knee MRI in March 2016[.]

(TR. 18). Mr. Roybal takes issue with the ALJ's explanation, stating: "The ALJ did not indicate to which temporary limitations he referred; therefore Claimant is unable to rebut ALJ's statements they 'were only intended to remain until the claimant underwent a left knee MRI in March 2016.' " The Court rejects Plaintiff's challenge—although the ALJ did not identify the provider by name, he referenced "Exhibit 1" and temporary limitations given by "urgent care providers." (TR. 18). It is obvious from the record that the ALJ was referring to the restrictions on pages 258 and 264 of the transcript and the limitations contained therein.

> Second, as to Dr. Montgomery's opinion, the ALJ stated:
>
> Though the claimant is clearly limited in standing/walking and carrying/lifting, the specific opinion was given in 2016. This is two years before the claimant's alleged period of disability, and during a time period when the claimant was performing a medium level of work activity. This directly conflicts with the limitations provided by Dr. Montgomery in 2016. Therefore, the undersigned finds the opinion unpersuasive and unsupported for the relevant time period and in the specific limitations.

(TR. 18). Plaintiff presents three arguments relating to the ALJ's treatment of Dr. Montgomery's opinion—none of which have merit. First, Mr. Roybal states: "Claimant argues despite the fact that his job at the time was performed at the medium level, Dr. Montgomery restricted him to less than sedentary, based on his knee, ankle, and back issues." (ECF No. 24:7). Apparently, Plaintiff believes that the ALJ erred in failing to adopt the limitations given by Dr. Montgomery. But Mr. Roybal does not further develop his argument and the Court will not do so, especially in light of the ALJ's explanation. See *Murphy v. Astrue*, 2011 WL 2144610, at * 6 (W.D. Okla. May 14, 2011) (rejecting allegation of error for "failure to develop the factual—and legal—bases for [the]

argument."). The undersigned will not search the record for Plaintiff nor address under developed arguments. *See Murrell v. Shalala,* 43 F.3d 1388, 1389 n. 2 (10th Cir. 1994) (finding that inadequately framed or developed "perfunctory complaints" are insufficient to invoke review).

Second, Plaintiff argues that "the Joint Petition settlement entered in connection with the Worker's Compensation ("WC") claim for which Dr. Montgomery treated him indicate more serious limitations." (ECF No. 24:7). According to Plaintiff, the ALJ erred in failing to discuss the fact that Dr. Montgomery treated Plaintiff in connection with a Worker's Compensation claim, "which he is required to do." (ECF No. 24:7-8). But again, Plaintiff fails to develop this argument or provide the Court with evidence or a record citation regarding the "Joint Petition settlement" which might reflect "more serious limitations" and the Court will not do so on Plaintiff's behalf. *See Kirkpatrick v. Colvin*, 663 F. App'x at 649 (noting that "it isn't [the Court's] obligation to search the record and construct a party's arguments.").

Finally, Mr. Roybal states: "Despite Claimant's testimony and the medical evidence in support of his continuing allegations of disabling knee pain and limitations, the ALJ failed to include any kneeling limitations in his RFC." (ECF No. 24:6). Plaintiff also states that the ALJ erred by filing to add, "at the very least" a limitation on kneeling and/or stooping/bending. (ECF No. 24:11). But Plaintiff does not point to any evidence in the record which suggests limitations greater than those set forth in the RFC on Plaintiff's abilities to kneel, bend, or stoop, and the Court will not comb the record for evidentiary support. *See supra*.

**D.     Mental Health Limitations**

Plaintiff contends the RFC was faulty because the ALJ failed to account for Plaintiff's mental health limitations. (ECF Nos. 24:8-9, 27:5-6). The Court disagrees.

The ALJ determined that Plaintiff suffered from medically determinable impairments involving depression and anxiety. (TR. 13). The regulations pertaining to the evaluation of mental impairments provide that the degree of a plaintiff's functional limitations will be rated in the following broad functional areas: activities of daily living, social functioning, concentration, persistence, or pace, and any episodes of decompensation, the so-called "B" criteria. 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(C). As to the first three areas, the possible ratings are none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). If the ratings in the first three areas are "none" or "mild" and if there have been no episodes of decompensation, a claimant's mental impairment is generally considered to be non-severe. 20 C.F.R. § 404.1520a(d)(1). Based on the ALJ's determination that Plaintiff had no more than a mild impairment in any of the four functional areas, he determined Plaintiff's depression and anxiety were non-severe impairments. (TR. 13).

Mr. Roybal does not challenge the ALJ's determination that he suffered no more than mild limitations and/or that his depression and anxiety were not found to be "severe." Instead, Plaintiff contends the ALJ erred by either not further discussing the impairment or by not including the mild limitations he found at step two in the RFC.

In *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013), the Tenth Circuit explained that when assessing a plaintiff's RFC, an ALJ must "consider the combined effect of all

medically determinable impairments, whether severe or not." *Id.* at 1069; *see* 20 C.F.R. § 404.1545(a)(2). In that case, the ALJ had determined at step two that the plaintiff's mental impairments were not severe and stated that "these findings do not result in further limitations in work-related functions in the RFC assessment below." *Wells*, 727 F.3d at 1069 (quotations and alterations omitted). Noting that this statement "suggests that the ALJ may have relied on his step-two findings to conclude that [the claimant] had no limitation based on her mental impairments," the Tenth Circuit held that "the Commissioner's regulations demand a more thorough analysis" for the RFC determination. *Id.* at 1069, 1071.

Here, the ALJ's decision does not reflect the type of conflation of the step two and step four determinations criticized in *Wells*. Indeed, in the instant case, the ALJ explicitly recognized the distinction in his decision:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following [RFC] assessment reflects the degree of limitation the [ALJ] has found in the "paragraph B" mental function analysis.

(TR. 13). Additionally, in determining the RFC, the ALJ considered the state agency psychological consultants' opinions that Plaintiff had no mental limitations in the B criteria. (TR. 18).

Social Security Ruling 96–8p, 1996 WL 374184, specifically cautions against any requirement that a noted paragraph B limitation equates to a corresponding RFC limitation. *Id.* at *4 ("The adjudicator must remember that the limitations identified in

the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."); *see also Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) ("[W]e conclude that the ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment in this case."); *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013) ("The ALJ was under no obligation to include limitations in social functioning in Ms. Beasley's RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis").

Moreover, Plaintiff does not cite to a single portion of the record that would support any RFC limitation related to her mental impairment. Plaintiff states: "[t]he record notes Claimant's onset date of anxiety in 1998, and onset of depression in 2005." (ECF No. 24:8). However, "[t]he mere diagnosis of a condition does not establish its severity or any resulting work limitations." *Paulsen v. Colvin*, 665 F. App'x 660 2016 WL 6440368 at *4 (10th Cir. 2016). Plaintiff also points to his testimony that: (1) he suffers from racing thoughts, (2) at times he cannot settle his mind, (3) he does not like to be around people, (4) he relies on his wife and notes he writes himself to remember things. (ECF No. 24:8). But the ALJ considered this testimony, *see* TR. 15, and Mr. Roybal does not specifically challenge the ALJ's decision in that regard. Aside from his testimony, Plaintiff does not direct the Court to any opinion in the record indicating he would require mental health limitations incorporated into the RFC. The Court rejects Plaintiff's challenge to the ALJ's treatment of Plaintiff's mental health.

### E.    Pain

Finally, Plaintiff alleges error in the ALJ's analysis of Mr. Roybal's pain. According

to Plaintiff, he has been diagnosed with chronic pain syndrome, and:

> [T]he ALJ failed to identify [the pain] as severe or non-severe. The ALJ
> was required to evaluate Claimant's pain from all his proven impairments
> and determine the degree to which pain impaired his ability to perform
> any work-related activities. The factors he should have considered
> include:
>
>> "(1) whether Claimant established a pain-producing
>> impairment by objective medical evidence; (2) if so, whether
>> there is a 'loose nexus' between the proven impairment and
>> the Claimant's subjective allegations of pain; and (3) if so,
>> whether, considering all the evidence, both objective and
>> subjective, Claimant's pain is in fact disabling.
>
> Claimant has provided the necessary evidence and nexus, *supra* and *infra*.
> Claimant argues this error necessarily flawed the decisional RFC. It does
> not include any consideration of limits on understanding, concentrating,
> focusing, or comprehending due to pain.

(ECF No. 24:9).

### 1.    ALJ's Duty to Evaluate Plaintiff's Subjective Allegations

Social Security Ruling 16-3p provides a two-step framework for the ALJ to

consider a claimant's symptoms, including pain, and determine the extent to which the

symptoms are consistent with the evidence in the record. SSR 16-3p, 2016 WL

1119029, at *2 (Mar. 16, 2016). First, the ALJ must make a threshold determination

regarding "whether there is an underlying medically determinable physical or mental

impairment(s) that could reasonably be expected to produce an individual's symptoms,

such as pain." *Id.* at *2. Second, the ALJ will evaluate the intensity and persistence of

the claimant's symptoms to determine the extent to which they limit an individual's

ability to perform work-related activities. *Id.* At step two, the ALJ will examine the objective medical evidence, the claimant's statements regarding her symptoms, information from medical sources, and "any other relevant evidence" in the record. *Id.* at *4. Finally, in evaluating a claimant's subjective statements, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. *Id.*, at *9.

### 2.    No Error in the ALJ's Consideration of Plaintiff's Pain

In formulating the RFC, the ALJ stated that he had considered Mr. Roybal's subjective allegations, including pain. (TR. 14-15). After identifying the two-step framework under SSR 16-3p, the ALJ stated:

> [T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(TR. 15).

According to Mr. Roybal, the ALJ: (1) failed to consider the proper factors in analyzing Plaintiff's pain and (2) erred by failing to include RFC limitations "on understanding, concentrating, focusing, or comprehending due to pain." (ECF No. 24:9). The Court rejects both arguments. First, the ALJ identified and utilized the proper framework for analyzing Plaintiff's pain. *See supra; see also* TR. 14-15. Second, Plaintiff has pointed to no evidence that any medical professional has opined limitations on Plaintiff's ability to understand, concentrate, focus, or comprehend due to pain. As

stated, a diagnosis of chronic pain syndrome is not enough to find limitations necessarily resulting therefrom. *See supra*. The Court affirms the ALJ's analysis of Mr. Roybal's pain.

## VI.    PLAINTIFF'S SECOND AND THIRD PROPOSITIONS

In his second proposition of error, Plaintiff alleges that the ALJ erred in applying the Grids because Plaintiff suffered from mental limitations and disabling pain, as set forth in Proposition One. (ECF Nos. 24: 11-12; 27:4-6). But based on the forgoing findings affirming the ALJ's consideration of Plaintiff's pain and mental health, the Court rejects this argument. Because the ALJ found that Plaintiff was capable of performing the full range of sedentary work, his reliance on the Grids was proper. *See supra*, SSR 83-11 (allowing application of the Grids when the claimant can perform all of the exertional demand at a given level of exertion, i.e.—a full range of "sedentary" work).

In Proposition Three, Plaintiff alleges that because the ALJ erred in applying the Grids (Proposition Two), he failed to satisfy his burden at step five to establish there were sufficient jobs in the national economy that Plaintiff could perform. (ECF Nos. 24:12-13, 27:6-8). As stated, the ALJ properly utilized the Grids based on his finding that Mr. Royal could perform the full exertional range of sedentary work. *See supra.* Because the Court finds no merit to Plaintiff's arguments that additional limitations were warranted owing to pain and mental impairments, *see supra*, the Court finds no error in the ALJ's use of the Grids. As a result, the Court rejects Plaintiff's argument that the ALJ should have made alternative findings at step five. *See Williams v. Bowen*, 844 F.2d

748, 751 (10th Cir. 1988) ("To meet th[e] [step five] burden, the Secretary may rely on the Medical–Vocational Guidelines (grids).").

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on October 22, 2021.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE